Good morning, Your Honor. May it please the Court, my name is Karina Acevedo. I'm representing the petitioner, Noemi Monges-Garcia, in this matter. To begin with this issue, Your Honor, I'd like to address first the congressional intent behind what is IRA, IRERA, I'm sorry, the passage of the 1996 Act. What are you relying on in terms of congressional intent? Well, Your Honor, I'm relying on the fact that Congress had intended to reduce frivolous lawsuits. Oh, excuse me, I'm asking what sources are you looking at? Oh, I'm sorry. Yes, it's the Federal Register, the 1996 Federal Register, which was given to the Department of Justice to implement Congress's passage of the IRERA Act of 1996. This is a rulemaking function that they were performing and their, the intention of Congress was specified in that document? Yes, Your Honor, I have. That's unusual. It's in, the Federal Register basically supplies the Department of Justice with the implementations of final rules and it did discuss, moreover, the intent behind, moreover, a recent case, the intent behind the amended act of the 1990 Immigration Act, which is the IRERA Act of 1996. And basically, I'm quoting verbatim, it's the expedited petitions for review to address the related problems of successive and frivolous administrative appeals and motions, and basically also to expedite both the initiation and the finality behind these procedures, these deportation proceedings. I'm lost. I mean, I don't know quite what this has to do with the problem in this case. Well, Your Honor, what I'm going to argue basically behind the intent is that circumstances have changed. Policies have changed. There's no finality to these cases, really. Temporary, like as it affects my client. Temporary protected status has been given to my client and many others. That works as a state of deportation. This was propagated past 1999 to 1998 to designated countries which have suffered national disasters, such as Honduras. Okay, so she had temporary protected status. Yes, she did, which is a state of deportation. It doesn't give her any legal status. But didn't that end at some point? It does end, Your Honor, but for other cases besides mine, and also 245I, it hasn't. People can renew them yearly as the Attorney General designates the country and gives them a renewal period. But what about for your client? For my client, Your Honor, what she's relying on, she had TPS, what is called temporary protected status. Now she relied on 235I, which is the Life Amendment Act, Your Honor, which was enacted and expanded between 1998 and 2001, giving aliens that entered illegally without inspection, who could not adjust their status to a legal status, to be able to do so. So she got married, Your Honor, basically, to a U.S. citizen who petitioned for her. And of course, she was five-year barred in the old act, the prior passage of the URERA. She was five-year barred, orally noticed, therefore five-year barred from seeking relief in the form of a justice of status. Okay, so now the five years are up. The five years are up, and she's went to the service, Your Honor, yes. She went to the service, followed the instructions, they told her, we can't do anything with your husband's petition or to adjust your status. She followed the instructions of basically filing a motion to reopen and terminating proceedings before an immigration judge, which she did follow. What's the problem now? Now, not only has the five-year bar passed, she's no longer barred from seeking this relief from 1994. She got the oral deportation in 1994, 99 is the five-year bar she applied way after. And now she's not only barred from that, but now she's barred by a 90-day relief due to the passage of URERA. So is she barred? Isn't that the argument? Yes, it's the time constraints that are trying to be imposed on her, which was passed after her deportation order was entered, Your Honor. What's your argument that they shouldn't be imposed on her? My argument is that it shouldn't, because there exists what they call an unexplained inconsistency here. I read a recent case decided by this court, which was Morales v. Gonzalez, which stated basically that the same rule implemented or used in its analysis is what I'm trying to use here as well. It's that that rule is reserved for rare circumstances, Your Honor, such as when an agency provides no explanation at all for a change in policy or when its explanation is so unclear or contradictory that we're left in doubt as to the reason for the change in direction. A broader rule would deny agencies the necessary flexibility to change policies in light of changed factual circumstances or change in administrations or change in policies. Change in policies here being that you've got temporary protective status, which was applied after Irura was passed. You've got the 245A-I, which is the life enactment passed after the passage. So all these people that have order of deportations prior to the passage and then may have been barred because they were orally noticed by a timely period cannot even file a motion to reopen based on new light, light of new relief. The 90-day reg is in conflict with the statute.  Well, I'm just trying to nail down your argument. Your argument is that it conflicts. Now, was that, well, what is your argument? My argument is that, Your Honor, there's the lack of sound reasoning. It's just capricious basically, the way the agency. That's what we're trying to find out. Well, the way the agency is implementing this, the 90-day rule after the bar has passed, Your Honor, two orders of deportations prior to the passage of the regime is that she passed the five-year point in time. So that's irrelevant now. Yes. So the question now is, can the 90-day bar be applied to her? Retroactively, Your Honor. Retroactively. That's your position. Yes. I'm saying that it cannot because the petitioner, respondents are relying on the We're trying to use post, what is ere right now, to further bar her from seeking relief, Your Honor. I see your point about the conflict as part of the main issue on this thing. But where is this issue raised in your brief? I see references to a different section of 1003.23, but not a discussion of the particular argument on the deadlines of 1003.23B1. Where is that in your brief? We did not address that issue because there was no 90-day deadline prior to the passage of RERA. So we, therefore, don't believe that it should be applicable now since respondents relied on barring her prior to law. So why are they further barring her? I had no idea the BIA would make the ruling it did. I'm sorry, Your Honor? That issue wasn't briefed before the BIA. No, it wasn't, Your Honor. But it was brought up by the respondents. And I believe there was a case that stated that if the respondents bring it up, they're not prejudiced. The court is not prejudiced in hearing. And I believe that's in Singh v. Ashcroft. I didn't think the government even mentioned this. I think that the BIA, at least at the IJ level, the BIA, I think, was the first time it was raised, right? That mentioned that even if the five-year bar applied to her, she still can't seek relief due to the 90-day motion to reopen from the day of the order of deportation is entered, which is part of the new IRERA law. Do you want to save the rest of your time for rebuttal? Yes, Your Honor. I will. Good morning, Your Honors. May it please the Court, Nora Oskoli-Schwarz for Respondent Alberto Gonzalez. The only issue here is, should the 90-day rule be applied to petitioner? It's not retroactive. It applies to motions to reopen. Well, has anybody ever decided that, including the BIA? Well, in this case. Well, the BIA's decision in this case is all messed up. I mean, first of all, they say the 90-day rule is being applied, but they don't cite the 90-day statute. Now, I'm willing to forgive that and say, okay, super. What they really meant to do was to cite the 90-day statute. But they've never, to my, I don't think, ever said that the 90-day rule, in a published opinion, the 90-day rule applies to pre-IRERA cases where you had an in absentia deportation order. Well, that's because the statute is clear. Well, I don't know that it's so clear. The How does it make sense? It doesn't make sense. You've got 90 days to reopen, on the one hand. Right? Okay, so that expired in her case, let's see, January, February, I mean, plus or minus, what, end of January of 1995. May I correct, Your Honor? Under the statute, she had until September 30th, 1996. I'll give you a second. If 90 days would have expired, then you get to the effective date of IRERA, which is September of 96. So you add on 90 days past that, okay? And then she's forever barred from making a motion to reopen, if I understand your position. Yes. Because there are no exceptional circumstances, and she was advised of the consequences. Well, that has not, I mean, see, this is the point. That's nothing to do with it. This is the whole point. Either the 90-day bar applies flat out, or you somehow got to reconcile it with the in absentia order issue, which is under 242B, I think is the number. Forgive me, I may be missing something. I don't see a conflict. If you want to reopen an in absentia order, you have 180 days to say. So you have agreed now, finally, that you don't have to get to rescind the in absentia order, okay? So put that order aside, the fact that it was in absentia. Okay. And then it goes, right? Okay. So under your reading of the 90-day rule, it's a general bar. Yes. To anybody. Yes, except asylum and changed circumstances. Anybody applying for reopening, right? Yes. So it has nothing to do with this in absentia thing, or with exceptional circumstances, or anything else. No, that's passed. You're right. Is that right? Yes. Okay. So she had 90 days from the end of September 1996. Yes. Beyond that, she has no ability to reopen, in your view. That's correct. Then how do you square that with the implicit recognition in 242B that she has no ability that an alien becomes eligible to adjust status after the passage of five years from the date of the deportation order? Well. Is that just empiric? Is it meaningless now? I mean, how do you square it? That's my question. Two points here. It doesn't apply in this case. So that's a general application, because her body I'm sorry? What's it? The five-year bar. Because her five years was I understand. And that becomes essentially irrelevant as a bar. Yes. But if it's a bar, it means it was a bar to her being eligible for adjustment of status. That's now passed. So she's eligible to adjust status. You agree with that? Yes. She's eligible to adjust status. Yes. But if she can't move to reopen because of the 90-day bar, then 242B's conferring eligibility on her after five years is meaningless. Potential eligibility, Your Honor. As counsel read No, it doesn't say potential. It says you aren't eligible for discretionary relief, including adjustment of status, until five years after the order is passed. Yes. Okay. So it doesn't say she's going to get it. But, I mean, it just puts a five-year bar ineligible. But after that, she's eligible. We've agreed on that, I think. Yes. Eligible to, yes. She's eligible to applaud, to get her status adjusted. But she can't do it by moving to reopen. Well, again, the answer to that is in the Federal Register that counsel read. In that, they say we want to bring finality. We want to change it. But if she can't move to reopen, then we can't.   But if she can't move to reopen, then we can't. I don't understand what that has to do with my question. Because, Your Honor, it was to Look. Don't explain it at the moment. Just help me through the thicket. Okay. You need to You need to give me your argument for why it doesn't matter. But have I misstated anything? No. But the point is you need to meet both. You need to have filed by 1996 or within 90 days if you are otherwise eligible. In other words, if it is But she did. She's not eligible. She won't be eligible until 1999. That's a good one. So you're saying the Code of Federal Regulations sort of inadvertently modified what's otherwise a right under the statute. No. There are two She has to meet both requirements. It has to be beyond 90 years and beyond 90 days. That's an absolute impossibility. Exactly. But the point is But I think her argument is that that was never intended. I disagree, Your Honor, because the point was to what happened before there were no limits in time and number or basis for motions to reopen. Congress said we want finality. We want a limit. So had she had an in absentia order in 1992 or 1991, and we've seen those, 1996, the 5 years would have been up. She could have met that deadline. But in this case, it was in 1994. She didn't reach it. So Congress is saying you have to have passed the 5 years and filed within 90 days. So there are two bars here. I think this goes back to Judge Reimer's original question. Okay. That's your interpretation. Yes, Your Honor. That this did away with the after 5 years, you can apply to adjust your status. You're saying this 90-day rule did away with that. I don't think so, Your Honor. I think you have to It did in this case, didn't it? No. That's your argument. You have to have – it has to be 5 years since that order plus beyond 90 days from September 30th. She had to wait until 1999. So in this case, it's an impossibility for her to both wait the 5 years and file within 90 days, right? But that's right. That's right. Okay. Now, my question is, who said that before? The BIA, a court, or is this your interpretation in this case? Well, in this case, I think the Immigration Tribunals applied matter of MS and discussed the 5-year rule. Matter of MS is irrelevant, as you can see. Exactly. But the point is they said she is subject to the time limitations. That is the only bar they addressed. She didn't make it. Would you agree that the BIA did not give a rational explanation for all this, for its reasoning on the conflict here? No, they didn't address the conflict. They just said her time barred. Exactly. Why should we not then be sending this back to the BIA? Isn't that the appropriate forum to address this conflict? Because there appears to be a conflict, certainly, in this case. Well, not in this case, Your Honor, because she would still be banned. Her 5 years were up in 1999, and she didn't file her motion to reopen within even 90 days of that. So she can't say that I waited 5 years, I had other eligibility, I waited 5 years, and then 90 days from my eligibility, I applied. She waited 2 years after that. So even at the most generous reading, even if you're going to extend it and say we're going to apply 5 years plus 90 days and ignore the September 30th bar, she doesn't qualify because she waited 2 years. One possible reading is a tolling thing. Basically, you either file 90 days of your deportation order and then defer the ruling for 5 years. That's possible. That's a possible reading. Or another possible reading is you've got 5 years before you can do it, so then you tack on the 90 days after that. Exactly. But who said that? Nobody. That's you and me sitting here saying, and I mean, I've scratched my head to figure out a whole bunch of possible answers to all this. But that's not really my job. I mean, at this point, that's the job of the BIA. Yes, but it's not your job in this case. It was hers to file with if she wants to make the argument. No, no, no. The BIA, sua sponte, tossed off the alternate ground of the 90-day bar. So she didn't have any obligation to respond to it at that point, and nobody challenged it. It hasn't been challenged until now. And we've now been coughed up a retroactivity issue, which could possibly be avoided. It's a constitutional issue that could be avoided depending upon how the BIA construes its own regulations in light of the statute. It's possible, but even under — Why shouldn't we let them do it so we avoid making a constitutional ruling? But it doesn't apply in this case. She cannot raise that argument. She could only raise it if she had applied within 90 days of her five years being up, if the eligibility had occurred within. She became eligible in 1996 when she married. By 1999, there was a visa petition pending, had been pending for three years. I don't know why it took this long to adjudicate. But the point is she could have moved to reopen within 90 days of the five years. In order to raise that argument and make it an issue in this case, she's two years too late. Except that the BIA said it was filed more than 90 days after the immigration judge's decision. So he's referring to the 94 decision. Right. So that's absolutely inconsistent with your statements right here. No, but the regulatory section that he's citing to is 90 days or September 30th. I think the board mentioned September 30th. So they said the IJ decision, but they were referring to the correct regulation. Oh, really? You can tell that from this decision? I can't. I can't read the BIA's mind. Well, don't they cite 1003.23? No, that's the whole point. They don't even cite the right statute. They cite the statute pertaining to in absentia orders. They don't even cite the 90-day statute. But never mind that. I assume that's what they meant. No. The regulatory requirement said it, 1003.2. And that's the promulgation of 242. But the point is I understand that there's potentially conflict, but it doesn't exist in this case. She cannot make the argument unless she filed within five years and 90 days past that. She cannot make the argument that she was constitutionally, that there's a constitutional bar that affected her case. What about the tolling concept that was raised a little while ago? Are you familiar with any kind of a tolling concept in this instance? No. Okay. Are you thinking of a particular instance? No, no. Well, I think Judge Wardlaw raised the possibility of tolling, but I don't. I just wondered if you had any comment on that. No, but that would be a discretionary. Where's Judge Reimer? I'm flattered. She's been thinking about this one for a long time. No, it is interesting. I really appreciate the order to show cause because you helped us focus our arguments. And my colleague did err and have the brief, and I do apologize for that. And thank you for the opportunity for correcting that. But, again, I would say that it's an interesting argument, but it's not this case. And the Board should be given an opportunity to address it in a case which brings up the issue, and this is not that case. All right. Thank you for your argument. Thank you, Your Honors. Ms. Acevedo. Your Honor, I'm going to raise just a few issues here quickly. Basically, the I-130, which was a petition filed by her husband, was approved in 2002, Your Honor. She couldn't apply. She couldn't adjust until the I-130 was approved, meaning a visa was available for her. That's why it took so long. Basically, the 90 days to September 30, 1996, which is that period, and, of course, again, she couldn't apply. She was five-year barred anyway. She couldn't apply until 1999. Now, this is my issue. I looked at many cases concerning motions to reopen. Most of them concern either they argued lack of notice or that they were not orally notified as in re-MS. That's why the five-year bar was not applied in that case, and he filed timely. Now, what I want to look at is, basically, I went into the immigration law today. The five-year law, the five years wasn't waived, basically. So, it didn't say, now, therefore, everybody who is five-year barred can now apply before September 30, 1996. Furthermore, the new law now bars them for 10 years, Your Honor, and it still doesn't mention a 90-day period. It mentions a 90-day period for in absentia orders that are not due to oral notice, that are based on exceptional circumstances, just like the old law, based on exceptional circumstances or lack of notice, which there's no time limit for. Interestingly enough, now it's a 10-year bar. You can't apply for 10 years if you're seeking to adjust. They applied, the BIA applied pre-IRA law to her, plus post-IRA law to her, meaning they applied not only the five-year bar, but now they applied the 90-day period that's for motions to reopen in general today, now, in what's in the book. What date did she actually file her motion to reopen? She filed a motion to reopen, Your Honor. Let me just take a look. 2003. Her I-130 was approved August 4, 2002. She applied for adjustment, meaning now she could get a visa. She was prima facie eligible to apply for adjustment to seek status. And then when she went to her interview, she was informed, you've got to file with the IJ a motion to reopen because we cannot hear your case. The case is closed. You were ordered to report in 1994. She did that, and this is where we are today. So suppose the 10-year bar applied to her. When would you have had to file your motion? On the day of the order of deportation. It's the same law, Your Honor. They just now made it tougher. They made it 10 years instead of five from the day the order of deportation is entered. So if it would have been 1994, it would have been 2004, but this is not what's happening here. They're applying her 1994, the law that was in effect in 1994, plus the 90-day rule that wasn't in existence when the law was in effect for her. So they should, at minimum, be consistent, you're saying? It's not, Your Honor. There just seems to be a conflict here that's just not working. The BIA addressed it. The IJ, the immigration judge addressed it. It's just that she's further barred. She'll never be able to address it. So you're arguing that this is a constitutional issue? I mean, I was looking at the same sphere, Your Honor. The legal, illegal retroactivity in these cases where Congress fails to make clear its expressed intent, where people just are not able to seek relief because they're applying laws retroactively, barring them from seeking relief that they may be able to seek if it weren't due to this law. Aside from the constitutional concept, doesn't counsel for the government have a point that under either standard, the 90-day or the five years, your client was at least two years late? Two years late because she was in prima facie eligible for a motion to reopen. One of the requirements is that you have to be prima facie eligible. If you don't have a visa available, Your Honor, and you don't have an adjustment of status, which is the next step after you just filed a petition, that doesn't mean you're prima facie eligible. There's a lot of fraud going on nowadays, unfortunately, with immigration. Just having an I-130 filed does not mean that you're prima facie eligible. When it's approved and you have a visa and you apply the next step, which is an adjustment of status application, which is the I-45 she applied, and she went to an interview with the service, then was she told we can't, and that's when she filed a motion to reopen, Your Honor. Doesn't this require a legislative amendment to correct this problem? Admittedly, there's a problem, but is that something that we can do, that the BIA can do, or does this require governmental change? I understand that this court's power is limited to basically seeing that the law is not making laws. I understand that. I'm not asking for this court to make laws. I'm asking to interpret them. What specifically, to get back to what Judge Reimer started with in the beginning, what specifically would you like, if you could have us do what you wanted to do, what would that be? Basically, Your Honor, I'm going to go with abuse of discretion. They acted arbitrarily, irrationally. I also sided with the recent case back in March, which was the Morales-Escuero, basically, as well, just stating that when an agency provides no explanation at all for a change, then this is what happens. We're here with an inconsistency here, and there's change in facts, change in circumstances, and Congress may have made their intent known that they wanted to close these cases and prevent frivolous motions. This is not a frivolous motion, Your Honor, and this case was closed, but the passage of ERA has made it conflicted with before the law before her should be applied to her. But BIA kind of ends up with the same problem that we do, does it not? Yes, it does, Your Honor. Yes, it does. But it further bars her. It says five years, yeah, we apply the law before, but not only that, you still can't apply. Basically, that's what they're saying. Well, it's the time. Yes, the time limit. The time constraints. Now, with the new 90-day, you still can't apply. All right. Thank you, Your Honors. Thank you for your argument, counsel. If you have any matters to start with, please submit them. We'll next hear argument in Rodriguez.
judges: Rymer, Wardlaw, Smith